UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

PATRICIA A. LYON,                    :
          Plaintiff,                 :
                                     :
     v.                              :      CA 05-193 T
                                     :
JO ANNE B. BARNHART,                 :
COMMISSIONER OF SOCIAL SECURITY,     :
          Defendant.                 :

### REPORT AND RECOMMENDATION

This matter is before the Court on a request for judicial review of the decision of the Commissioner of Social Security ("the Commissioner"), denying Disability Insurance Benefits ("DIB"), under § 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g) ("the Act"). Plaintiff Patricia A. Lyon ("Plaintiff") has filed a motion for summary judgment. Defendant Jo Anne B. Barnhart ("Defendant") has filed a motion for an order affirming the decision of the Commissioner.

This matter has been referred to me for preliminary review, findings, and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth herein, I find that the Commissioner's decision that Plaintiff is not disabled is not supported by substantial evidence in the record. Accordingly, based on the following analysis, I recommend that Plaintiff's Motion for Summary Judgment (Document ("Doc.") #5) ("Motion for Summary Judgment") be granted to the extent that the matter be remanded for further administrative proceedings and that Defendant's Motion for an Order Affirming the Decision of the Commissioner(Doc. #6) ("Motion to Affirm") be denied.

### Facts and Travel

Plaintiff was born on September 29, 1959. (Record ("R.") at 16, 32, 148) She completed high school and has a two year

associate's degree.  (R. at 16, 32-33, 174)  In the relevant past she worked as an office manager, administrative assistant, account technician, and data entry clerk.  (R. at 16, 169)

Plaintiff filed an application for DIB on August 3, 2002, alleging disability since June 14, 2002, due to fibromyalgia and arthritis.[1]  (R. at 14, 148-50, 168)  The application was denied initially and on reconsideration, (R. at 103-06, 110-13), and on February 13, 2004, an administrative law judge ("ALJ") conducted a hearing at which Plaintiff and a vocational expert appeared and testified.  (R. at 28-61)  On June 25, 2004, the ALJ issued a decision in which he found that Plaintiff was not disabled.[2]  (R. at 89-96)  Plaintiff sought review of the ALJ's decision by the Appeals Council, and on September 3, 2004, the Appeals Council vacated the hearing decision and remanded the case for further consideration of Plaintiff's treating physician's opinion.  (R. at 100-02)  On December 2, 2004, the same  ALJ conducted a second hearing at which Plaintiff appeared and testified.  (R. at 62-83)  Also appearing but not testifying was a vocational expert.  (Id.)  The ALJ issued a decision on December 22, 2004, finding that Plaintiff was not disabled.  (R. at 14-22)  The Appeals Council

---

[1] Specifically, she alleged "fatigue - need to rest often; pain in back, arms, legs, knees, feet, frequent headaches, can't sit or stand for long periods of time."  (R. at 168)

[2] In that decision, the ALJ found that: Plaintiff had not engaged in substantial gainful activity since her alleged onset date; that her fibromyalgia and arthritis constituted severe impairments as defined by the regulations, but did not meet or equal any listed impairments; that she could lift 20 pounds occasionally and 10 pounds frequently and, therefore, retained the capacity to perform a wide range of light work that could be done with occasional periods of moderate reduction in attention and concentration; that she was able to perform her past relevant work as an account technician and as a data entry worker; and that, alternatively, her occupational base was not significantly eroded as a significant number of jobs within her residual functional capacity existed in the national/regional economy, according to the vocational expert's testimony.  (R. at 14); see also (R. at 94-95).

subsequently denied Plaintiff's request for review, thereby rendering the ALJ's December 22, 2004 decision the final decision of the Commissioner.  (R. at 6-8)

A Complaint (Doc. #1) was filed in this Court on May 5, 2005.  Defendant on June 21, 2005, filed her Answer (Doc. #2).  An Order (Doc. #3) referring the case to this Magistrate Judge for a report and recommendation was entered on September 13, 2005.  On September 23, 2005, Plaintiff's Motion for Summary Judgment (Doc. #5) was filed, followed on October 5, 2005, by Defendant's Motion to Affirm (Doc. #6).  Plaintiff's Reply Memorandum (Doc. #7) ("Plaintiff's Reply") was filed on October 19, 2005.

## Issue

The issue for determination is whether the decision of the Commissioner that Plaintiff is not disabled within the meaning of the Act, as amended, is supported by substantial evidence in the record and is free of legal error.

## Standard of Review

The Court's role in reviewing the Commissioner's decision is limited.  Brown v. Apfel, 71 F.Supp.2d 28, 30 (D.R.I. 1999).  Although questions of law are reviewed *de novo*, the Commissioner's findings of fact, if supported by substantial evidence in the record,[3] are conclusive.  Id. (citing 42 U.S.C. § 405(g)).  The determination of substantiality is based upon an evaluation of the record as a whole.  Id. (citing Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1999)("We

---

[3] The Supreme Court has defined substantial evidence as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 217 (1938)); see also Suranie v. Sullivan, 787 F.Supp. 287, 289 (D.R.I. 1992).

must uphold the [Commissioner's] findings ... if a reasonable
mind, reviewing the evidence in the record as a whole, could
accept it as adequate to support his conclusion.")(second
alteration in original)).  The Court does not reinterpret the
evidence or otherwise substitute its own judgment for that of the
Commissioner.  Id. at 30-31 (citing Colon v. Sec'y of Health &
Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)).  "Indeed, the
resolution of conflicts in the evidence is for the Commissioner,
not the courts."  Id. at 31 (citing Rodriguez v. Sec'y of Health
& Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)(citing
Richardson v. Perales, 402 U.S. 389, 399, 91 S.Ct. 1420, 1426
(1971))).

**Law**

To qualify for DIB, a claimant must meet certain insured
status requirements,[4] be younger than sixty-five years of age,
file an application for benefits, and be under a disability as
defined by the Act.  See 42 U.S.C. § 423(a).  The Act defines
disability as the "inability to engage in any substantial gainful
activity by reason of any medically determinable physical or
mental impairment which can be expected to result in death or
which has lasted or can be expected to last for a continuous
period of not less than 12 months ...."  42 U.S.C. §
423(d)(1)(A).  A claimant's impairment must be of such severity
that she is unable to perform her previous work or any other kind
of substantial gainful employment which exists in the national
economy.  See 42 U.S.C. § 423(d)(2)(A).  "An impairment or
combination of impairments is not severe if it does not
significantly limit [a claimant's] physical or mental ability to

---

[4] Plaintiff met the insured status requirements as of June 14,
2002, the alleged onset of her disability, and was insured through at
least December 22, 2004, the date of the second hearing decision.  (R.
at 16, 22)

do basic work activities."[5]   20 C.F.R. § 404.1521(a) (2006).   A
claimant's complaints alone cannot provide a basis for
entitlement when they are not supported by medical evidence.   See
Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 20-21 (1[st]
Cir. 1986).

The Social Security regulations prescribe a five-step
inquiry for use in determining whether a claimant is disabled.
See 20 C.F.R. § 404.1520(a) (2006); see also Bowen v. Yuckert,
482 U.S. 137, 140-42 (1987); Seavey v. Barnhart, 276 F.3d 1, 5
(1st Cir. 2001).   Pursuant to that scheme, the Secretary must
determine sequentially: (1) whether the claimant is presently
engaged in substantial gainful work activity; (2) whether she has
a severe impairment; (3) whether her impairment meets or equals
one of the Commissioner's listed impairments; (4) whether she is
able to perform her past relevant work; and (5) whether she
remains capable of performing any work within the economy.   See
20 C.F.R. § 404.1520(b)-(g).   The evaluation may be terminated at
any step.   See Seavey, 276 F.3d at 4.   "The applicant has the
burden of production and proof at the first four steps of the
process.   If the applicant has met his or her burden at the first
four steps, the Commissioner then has the burden at Step 5 of
coming forward with evidence of specific jobs in the national

---

[5] Section 404.1521 describes "basic work activities" as "the
abilities and aptitudes necessary to do most jobs."   20 C.F.R. §
404.1521(b) (2006).   Examples of these include:

> (1) Physical functions such as walking, standing, sitting,
> lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple
> instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and
> usual work situations; and
> (6) Dealing with changes in a routine work setting.

Id.

economy that the applicant can still perform."   Freeman v.
Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).

## ALJ's Decision

Following the familiar sequential analysis, the ALJ in the
instant case made the following findings: that Plaintiff had not
engaged in substantial gainful activity since the alleged onset
of her disability on June 14, 2002, (R. at 16, 20); that
Plaintiff's arthritis, GERD,[6] mild carpal tunnel syndrome, and
mental limitations were not severe impairments, but her
fibromyalgia, mild degenerative cervical and thoracic spine/disc
disease and muscle contraction headaches/migraine headaches did
constitute severe impairments, (R. at 20); that, nevertheless,
these severe impairments did not meet or equal any listed
impairment, (R. at 21); that the severity of the symptoms and
degree of incapacity alleged by Plaintiff were not supported by
the record and not deemed to be credible, (id.); that Plaintiff
had the residual functional capacity ("RFC") to perform work at
the light exertional level,[7] with occasional moderate limitations

---

[6] GERD, or gastroesophageal reflux disease, is defined as
"backward flow of the gastric contents into the esophagus resulting
from improper functioning of a sphincter at the lower end of the
esophagus ...."   Merriam Webster's Medical Desk Dictionary 297 (1996).

[7] Light work

involves lifting no more than 20 pounds at a time with
frequent lifting or carrying of objects weighing up to 10
pounds.  Even though the weight lifted may be very little, a
job is in this category when it requires a good deal of
walking or standing, or when it involves sitting most of the
time with some pushing and pulling of arm or leg controls.  To
be considered capable of performing a full or wide range of
light work, [a claimant] must have the ability to do
substantially all of these activities.  If someone can do
light work, we determine that he or she can also do sedentary
work, unless there are additional limiting factors such as
loss of fine dexterity or inability to sit for long periods of
time.

in concentration and attention, (<u>id.</u>); that this RFC did not preclude performance of Plaintiff's past relevant work as an account technician and data entry worker, (<u>id.</u>); that, alternatively, significant numbers of unskilled jobs at the light and sedentary levels existed in the regional/national economy which were within Plaintiff's residual functional capacity, even if she were unable to perform her past relevant work, (<u>id.</u> at 20 n.9, 21 n.10); and that Plaintiff was not under a "disability," as defined by the Act, at any time through the date of the decision (R. at 21).

### Errors Claimed

Plaintiff alleges that: 1) the ALJ's RFC assessment that Plaintiff is able to perform light work with moderate limitations in concentration and attention is not supported by substantial evidence because the ALJ improperly adopted the assessments of two non-examining Disability Determination Services ("DDS") physicians over the contrary opinion of her treating physician, <u>see</u> memorandum submitted in support of Motion for Summary Judgment ("Plaintiff's Mem.") at 8-14; and 2) the ALJ failed to consider the effects of Plaintiff's pain and fatigue or to analyze whether Plaintiff was able to sustain work on a regular and continuing basis, <u>see</u> <u>id.</u> at 14-19.

### Discussion

**I. Whether substantial evidence supports the ALJ's RFC finding for light exertional work with moderate limitations in concentration and attention**

Plaintiff argues that the ALJ's RFC finding is not supported by substantial evidence because the ALJ improperly adopted the RFC assessments of two non-examining DDS physicians over those of Plaintiff's treating physician.  <u>See</u> Plaintiff's Mem. at 11-14.

---

20 C.F.R. § 404.1567(b) (2006).

Defendant counters that the ALJ properly considered the medical source opinions, <u>see</u> Defendant's Memorandum of Law in Support of Motion for an Order Affirming the Decision of the Commissioner ("Defendant's Mem.") at 12.

The ALJ found that:

> {Plaintiff] has the residual functional capacity to perform work of a light exertional level as she can lift and carry up to 10 pounds frequently and 20 pounds occasionally as well as sit for at least 6 hours in an 8 hour work day and stand and/or walk for at least 6 out of 8 hours in an 8 hour work day, and that can be done with the further non-exertional limitation of occasional moderate reduction in attention and concentration.

(R. at 21)  He based this finding on his review of the entire record, (R. at 18), and observed that he had "carefully considered," (R. at 17), Plaintiff's allegations and testimony regarding her pain and fatigue, (<u>id.</u>).  The ALJ further noted that:

> [T]he non-examining state agency physicians in connection with the initial and reconsideration determinations maintained that [Plaintiff] was capable of lifting and carrying 10 pounds frequently and 20 pounds occasionally, sitting for about 6 hours in an 8 hour work day and standing and/or walking for about 6 out of 8 hours in an 8 hour work day, which would be consistent with the ability to perform light work activity.  In view of the fact that those assessments are consistent with the record as a whole and are not contradicted by a competent, well supported, functional capacity assessment from a treating source they would be entitled to significant probative weight.

(R. at 18-19)(internal citations omitted).

The ALJ was not persuaded by the contrary opinions of Plaintiff's treating physician, Mark R. Bell, M.D.  (R. at 19)  Explaining his reasons for discounting Dr. Bell's opinions, the ALJ wrote:

Dr. Bell stated in an office note dated October 20, 2003,

that [Plaintiff] was disabled; in an assessment dated
January 28, 2004, maintained that [Plaintiff] was unable
to lift or carry more than 5 pounds occasionally or sit,
stand or walk for more than 1 hour each at a time and 2
hours each in an 8 hour day; and in an assessment dated
December 1, 2004, opined that [Plaintiff] was limited to
sitting, standing and walking a maximum of 0 to 1 hour
each at a time *and* total in an 8 hour work day, that she
was unable to do *any* lifting or carrying, that she could
not push or pull leg or arm controls or perform fine
manipulations with either hand, and that she was unable
to do any bending, squatting, crawling, climbing or
reaching.  These assessments are *all* inconsistent with
the record as a whole, which shows essentially nothing
other than [Plaintiff's] complaints.  Also, Dr. Bell's
December 2004 assessment states that [Plaintiff's]
functional capabilities have declined even further, but
there is no medical basis in the record to support this
conclusion.  The current assessment (based on diagnoses
which, it is noted again, have produced essentially no
significant *objective* medical evidence of impairment)
would limit [Plaintiff] to a degree that would require
her to *lie down* for at least 5 of every 8 hours.  *Nothing*
in the record, including her allegations and her
description of her usual daily activities, supports a
conclusion that she proceeds through life mostly in
recumbent rest.  Accordingly, these assessments are
afforded less probative weight than the other medical
assessments in the file (discussed above, and found to
deserve significant evidentiary weight) and are not
considered to be persuasive.

(R. at 19)( internal footnotes, citations, and quotation marks
omitted).

Plaintiff argues that the ALJ improperly weighed the medical
source opinions for essentially three reasons.  First, Plaintiff
asserts that the ALJ did not properly evaluate Dr. Bell's
opinions pursuant to 20 C.F.R. § 404.1527.[8]  See Plaintiff's Mem.

---

[8] Section 404.1527 provides, in relevant part:

   Regardless of its source, we will evaluate every medical
   opinion we receive.  Unless we give a treating source's
   opinion controlling weight under paragraph (d)(2) of this
   section, we consider all of the following factors in deciding

————————————

> the weight we give to any medical opinion.
> (1) Examining relationship. Generally, we give more
> weight to the opinion of a source who has examined you
> than to the opinion of a source who has not examined
> you.
> (2) Treatment relationship. Generally, we give more
> weight to opinions from your treating sources, since
> these sources are likely to be the medical professionals
> most able to provide a detailed, longitudinal picture of
> your medical impairment(s) and may bring a unique
> perspective to the medical evidence that cannot be
> obtained from the objective medical findings alone or
> from reports of individual examinations, such as
> consultative examinations or brief hospitalizations. If
> we find that a treating source's opinion of the issue(s)
> of the nature and severity of your impairment(s) is
> well-supported by medically acceptable clinical and
> laboratory diagnostic techniques and is not inconsistent
> with the other substantial evidence in your case record,
> we will give it controlling weight. When we do not give
> the treating source's opinion controlling weight, we
> apply the factors listed in paragraphs (d)(2)(i) and
> (d)(2)(ii) of this section, as well as the factors in
> paragraphs (d)(3) through (d)(6) of this section in
> determining the weight to give the opinion. We will
> always give good reasons in our notice of determination
> or decision for the weight we give your treating
> source's opinion.

20 C.F.R. § 404.1527(d) (2006). The factors to be considered when a
treating source's opinion is not given controlling weight are: (1) the
length of the treatment relationship and the frequency of examination;
(2) the nature and extent of the treatment relationship; (3) the
supportability of the opinion; (4) the consistency of the opinion with
the record as a whole; (5) the specialization of the source; and (6)
other factors. 20 C.F.R. § 404.1527(d)(2)-(6). The "other factors"
include "the amount of understanding of our disability programs and
their evidentiary requirements that an acceptable medical source has,
regardless of the source of that understanding, and the extent to
which an acceptable medical source is familiar with the other
information in your case record ...." 20 C.F.R. § 404.1527(d)(6).
In addition, § 404.1527 provides that:

> Opinions on some issues, such as the examples that follow, are
> not medical opinions ... but are, instead opinions on issues
> reserved to the Commissioner because they are administrative
> findings that are dispositive of a case; i.e., that would
> direct the determination or decision of disability.
> (1) Opinions that you are disabled. We are responsible
> for making the determination or decision about whether

10

at 11-13.   Second, Plaintiff contends that the ALJ's rejection of the assessment of Plaintiff's treating physician because it was not based on "significant **objective** medical evidence of impairment," Plaintiff's Mem. at 13, is unfair when evaluating fibromyalgia,[9] a disease for which no specific laboratory or diagnostic tests have been developed, (id.).   Third, Plaintiff maintains that the assessments of the two non-examining DDS physicians should be entitled to limited weight because they did not have access to a significant portion of the medical record. Plaintiff's Mem. at 14.

---

you meet the statutory definition of disability.   In so doing, we review all of the medical findings and other evidence that support a medical source's statement that you are disabled.   A statement by a medical source that you are "disabled" or "unable to work" does not mean that we will determine that you are disabled.

(2) Other opinions on issues reserved to the Commissioner.   We use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s).   Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to this subpart, your residual functional capacity, or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner.

20 C.F.R. § 404.1527(e) (internal citations omitted); see also Social Security Ruling ("SSR") 96-5p, 1996 WL 374183 (S.S.A.), at *3 ("[T]he adjudicator is precluded from giving any special significance to the source; e.g., giving a treating source's opinion controlling weight, when weighing these opinions on issues reserved to the Commissioner.").

[9] Fibromyalgia is defined as "[a] syndrome of chronic pain of musculoskeletal origin but undertain cause.   Stedman's Medical Dictionary 671 (27th ed. 2000).   This disorder is also commonly referred to as fibrositis." Green-Younger v. Barnhart, 335 F.3d 99, 101 n.1 (2nd Cir. 2003); see also Lopes v. Barnhart, 372 F.Supp.2d 185, 189 n.6 (D. Mass. 2005)("Fibromyalgia is 'pain and stiffness in the muscles and joints that is either diffuse or has multiple trigger points.'   Dorland's Illustrated Medical Dictionary at 697.").

As an initial matter, the Court notes that Dr. Bell's October 20, 2003, statement that Plaintiff was "disabled," (R. at 345), is an opinion on an issue reserved for the Commissioner, see 20 C.F.R. § 404.1527(e)(1). Accordingly, the ALJ was not required to give it controlling weight. See id.; see also Arroyo v. Sec'y of Health & Human Servs., 932 F.2d 82, 89 (1st Cir. 1991)("The ALJ was not required to accept the conclusions of claimant's treating physicians on the ultimate issue of disability."); Social Security Ruling ("SSR") 96-5p, 1996 WL 374183 (S.S.A.), at *3.

Regarding Dr. Bell's January 28, 2004, and December 1, 2004, assessments, Plaintiff argues that the ALJ was "required to consider each of the § 404.1527(d) factors before declining to give any weight to the opinions of the claimant's treating specialist." Plaintiff's Mem. at 12 (quoting Newton v. Apfel, 209 F.3d 448, 456 (5th Cir. 2000)). However, there is no requirement in this circuit that the ALJ address each factor. See Frost v. Barnhart, No. 03-215-P-H, 2004 WL 1529286, at *6 (D. Me. May 7, 2004)(explicitly rejecting Newton v. Apfel and stating that "[t]he plaintiff does not cite, nor do I find, First Circuit caselaw indicating that there are circumstances under which an administrative law judge must slavishly discuss each of the section 404.1527(d)(2) criteria"); see also id. at *6 n.5 (citing cases in which "the First Circuit has upheld reject[i]on of treating-physician opinions on the basis of consideration of select section 404.1527(d) factors"). The ALJ addressed the consistency and supportability of Dr. Bell's opinions. (R. at 19) Further, the ALJ was aware that Dr. Bell was Plaintiff's primary care physician, (R. at 18, 37, 92[10]), and that Dr. Bell

_____

[10] The latter reference is to the ALJ's June 25, 2004, decision. (R. at 89-96) The ALJ in his current decision incorporated by reference the discussion of the medical evidence pertaining to Plaintiff's fibromyalgia contained in the prior decision. (R. at 18

had treated Plaintiff since June of 2000, (R. at 92). As for specialization, there is no evidence in the record that Dr. Bell is a specialist in fibromyalgia. On the contrary, Plaintiff testified at the February 13, 2004, hearing that Dr. Bell's specialty is "internal med[icine]." (R. at 37)

Moreover, there was no need for the ALJ to recontact Dr. Bell, see Plaintiff's Mem. at 13-14, as the ALJ expressed no uncertainty regarding the basis for Dr. Bell's opinions, see Annaloro v. Barnhart, No. 03-252-P-C, 2004 WL 1529260, at *6 (D. Me. June 24, 2004)(finding that no duty to recontact arose and stating that "the duty to recontact a treating physician for clarification as to an RFC opinion is triggered only when (i) 'the evidence does not support a treating source's opinion[,]' and (ii) 'the adjudicator cannot ascertain the basis of the opinion from the case record[.]'")(quoting SSR 96-5p)(alterations in original). Rather, the ALJ stated that the opinions were based on Plaintiff's subjective complaints. (R. at 19)

Plaintiff also argues that the ALJ erred in discounting Dr. Bell's opinions because they were not supported by objective medical evidence. See Plaintiff's Mem. at 8-11. Defendant does not rebut this argument, stating that "[a]ssuming, arguendo, that the ALJ erred in making that finding, that error would be harmless." Defendant's Mem. at 15.

> [F]ibromyalgia, also known as fibrositis-[is] a common, but elusive and mysterious, disease, much like chronic fatigue syndrome, with which it shares a number of features. See Frederick Wolfe, et al., "The American College of Rheumatology 1990 Criteria for the Classification of Fibromyalgia: Report of the Multicenter Criteria Committee," 33 Arthritis & Rheumatism 160 (1990); Lawrence M. Tierney, Jr., Stephen J. McPhee & Maxine A. Papadakis, Current Medical Diagnosis & Treatment 1995 708-09 (1995). Its cause or causes are

n.4)

13

> unknown, there is no cure, and, of greatest importance to
> disability law, its symptoms are entirely subjective.
> There are no laboratory tests for the presence or
> severity of fibromyalgia.  The principal symptoms are
> "pain all over," fatigue, disturbed sleep, stiffness,
> and-the only symptom that discriminates between it and
> other diseases of a rheumatic character-multiple tender
> spots, more precisely 18 fixed locations on the body (and
> the rule of thumb is that the patient must have at least
> 11 of them to be diagnosed as having fibromyalgia) that
> when pressed firmly cause the patient to flinch.  All
> these symptoms are easy to fake, although few applicants
> for disability benefits may yet be aware of the specific
> locations that if palpated will cause the patient who
> really has fibromyalgia to flinch.

Sarchet v. Chater, 78 F.3d 305, 306-07 (7th Cir. 1996); see also

Lopes v. Barnhart, 372 F.Supp.2d 185, 189 n.6 (D. Mass. 2005)

(quoting Sarchet, 78 F.3f at 306-07).  "[T]here are no objective

tests which can conclusively confirm the disease."  Green-Younger

v. Barnhart, 335 F.3d 99, 108 (2nd Cir. 2003); see also Preston

v. Sec'y of Health & Human Servs., 854 F.2d 815, 819 (6th Cir.

1988) ("Our task ... is complicated by the very nature of

fibrositis.  Unlike most diseases that can be confirmed or

diagnosed by objective medical tests, fibrositis can only be

diagnosed by elimination of other medical conditions which may

manifest fibrositis-like symptoms of musculoskeletal pain,

stiffness, and fatigue."); Weiler v. Shalala, 922 F.Supp. 689,

693 n.6 (D. Mass. 1996)(noting that "diagnosing fibrymyalgia is a

process of exclusion").  In the instant matter, the ALJ accepted

that Plaintiff had been diagnosed with fibromyalgia, (R. at 18),

and that her fibromyalgia constituted a severe impairment, (R. at

16, 20).  Therefore, much of Plaintiff's second argument is

inapposite.  See Plaintiff's Mem. at 8-11; see also Defendant's

Mem. at 13 n.4 (noting that "[t]o the extent [Plaintiff] is

arguing that the ALJ erred by failing to find that her

fibromyalgia was either a medically determinable impairment or a

severe impairment, her argument is without merit, as the ALJ

14

clearly found that Plaintiff suffered from fibromyalgia and that her fibromyalgia was a severe impairment").

Since the ALJ discounted Dr. Bell's Physical Capacity Assessments, however, the only remaining RFC assessments in the record are those of the non-examining state agency physicians. (R. at 189-9, 231-38)   As noted above, the ALJ relied on the latter assessments in formulating Plaintiff's RFC over those of Dr. Bell, (R. at 19)(stating that Dr. Bell's "assessments are afforded less probative weight than the other medical assessments in the file (discussed above and found to deserve significant evidentiary weight) and are not considered to be persuasive").

"It is within the [Commissioner's] domain to give greater weight to the testimony and reports of medical experts who are commissioned by the [Commissioner]." <u>Keating v. Sec'y of Health & Human Servs.</u>, 848 F.2d 271, 275 n.1 (1st Cir. 1988); <u>cf.</u> <u>Arroyo v. Sec'y of Health & Human Servs.</u>, 932 F.2d 82, 89 (1st Cir. 1991)("The law in this circuit does not require ALJs to give greater weight to the opinions of treating physicians."); <u>Tremblay v. Sec'y of Health & Human Servs.</u>, 676 F.2d 11, 13 (1st Cir. 1982)(noting that the First Circuit "ha[s] repeatedly refused to adopt any per se rule to that effect").   Although the First Circuit "held in <u>Browne v. Richardson</u>, 468 F.2d 1003 (1st Cir. 1972), that, on the facts of that case, a written report submitted by a non-testifying, non-examining physician who merely reviewed the written medical evidence could not alone constitute substantial evidence to support the [Commissioner's] conclusion," <u>Berrios Lopez v. Sec'y of Health & Human Servs.</u>, 951 F.2d 427, 431 (1st Cir. 1991), it is clear from later decisions, however, "that this is not an absolute rule," <u>Gordils v. Sec'y of Health & Human Servs.</u>, 921 F.2d 327, 328 (1st Cir. 1990)(citing <u>Tremblay</u>, 676 F.2d at 13); <u>see also</u> <u>Berrios Lopez</u>, 951 F.2d at 431 (same). "Such an advisory report is entitled to some evidentiary weight,

which 'will vary with the circumstances, including the nature of the illness and the information provided the expert.'" Gordils, 921 F.2d at 328 (quoting Rodriquez v. Sec'y of Health & Human Servs., 647 F.2d 218, 223 (1st Cir. 1981)); see also Berrios Lopez, 951 F.3d at 431 (same); Guzman Diaz v. Sec'y of Health & Human Servs., 613 F.2d 1194, 1199 n.7 (1st Cir. 1980)(same); Thompson v. Barnhart, Civil Action No. 05-11051-DPW, 2006 WL 2506035, at *3 (D. Mass. Aug. 28, 2006)("The First Circuit considers the following factors in determining whether a non-examining physician's opinion is entitled to evidentiary weight: whether the doctor's report contains substantial subsidiary findings; whether the majority of the evidence was available to the non-examining physician; whether the medical evidence was reviewed with care[;] and whether there was broad agreement reflected in the advisory opinions.")(citing DiVirgilio v. Apfel, 21 F.Supp.2d 76, 81 (D. Mass. 1998); cf. Rose v. Shalala, 34 F.3d 13, 18-19 (1st Cir. 1994)(stating, in case involving chronic fatigue syndrome ("CFS"), that "[t]he deciding factor in this case is 'the nature of the illness'" and holding that the non-examining agency physicians' reports, without more, could not constitute substantial evidence in support of the ALJ's finding)(quoting Berrios Lopez, 951 F.2d at 431).

In the circumstances of this case, the Court concludes that the reports of the non-examining state agency doctors cannot constitute substantial evidence supporting the ALJ's RFC finding and ultimate disability determination. See Guzman Diaz, 613 F.2d at 1199 n.7; Browne, 468 F.2d at 1006-07. The Court reaches this conclusion for several reasons.

As noted above, a key factor is the nature of the illness. Rose, 34 F.3d at 18; Gordils, 921 F.2d at 328. Given the longitudinal nature of fibromyalgia, the opportunity to review the entire record from treating sources takes on greater

16

significance.  Cf. Cook v. Liberty Life Assurance Co. of Boston, 320 F.3d 11, 21 (1st Cir. 2003)(noting that "[d]iagnosing CFS is not sport for the short-winded")(quoting Rose, 32 F.3d at 18); see also Rose, 34 F.3d at 19 ("The subjective severity of a claimant's fatigue associated with CFS is not something readily evaluated on an algid administrative record."); accord Reddick v. Chater, 157 F.3d 715,726 (9th Cir. 1998)("The treating physician's continuing relationship with the claimant makes him especially qualified to evaluate reports from examining doctors, to integrate the medical information they provide, and to form an overall conclusion as to functional capacities and limitations, as well as to prescribe or approve the overall course of treatment").  As the First Circuit observed in Browne regarding the report of a non-examining, non-testifying agency physician, "[h]is report thus lacks the assurance of reliability that comes on the one hand from first-hand observation and professional examination or, on the other, from first-hand testimony subject to claimant's cross-examination," 468 F.2d at 1006; see also Thompson v. Barnhart, 2006 WL 2506035, at *4 (quoting Browne, 468 F.2d at 1006).

This is not to say that in all fibromyalgia cases the ALJ must never rely on the assessments of non-examining physicians. Here, however, both reviewing physicians, Edward R. Hanna, M.D., and Amir Missagnian, M.D., indicated that there was no statement from a treating or examining source regarding Plaintiff's physical capabilities in the file when they rendered their opinions, on September 3, 2002, and November 1, 2002, respectively.  (R. at 195, 237); see also Walker v. Barnhart, No. Civ.A. 04-11752-DPW, 2005 WL 2323169, at *17 (D. Mass. Aug. 23, 2005)(noting that the "physical RFC assessments were based on reviews of the paper record only—which contained no treating or examining source statements regarding the claimant's physical

capacities—and neither doctor performed an in-person examination
of [the plaintiff]")(internal quotation marks omitted).  The only
Physical Capacities Evaluations from treating and/or examining
physicians in the record are Dr. Bell's Physical Capacities
Evaluations, dated January 28, 2004, and December 1, 2004.  (R.
at 355, 368)  It is undisputed that the non-examining state
agency physicians did not have Dr. Bell's January and December
2004 assessments before them.  See Plaintiff's Mem. at 14;
Defendant's Mem. at 18.

      In addition, the state agency doctors submitted their
reports over a year before the February 13, 2004, hearing and
more than two years prior to the December 1, 2004, hearing.  See
Thompson v. Barnhart, 2006 WL 2506035, at *5 ("[T]he DDS report
did not include the three years leading up to [the plaintiff's]
2004 hearing; rather, it was written in 2001."); see also Gordils
v. Sec'y of Health & Human Servs., 921 F.2d 327, 330 (1st Cir.
1990)(noting plaintiff's objection to ALJ's reliance on non-
examining physician's report which was submitted before some
medical examinations in record were conducted and agreeing that
this was factor to consider).  This circumstance occurred, in
part, due to the remand of the matter by the Appeals Council.
Nonetheless, although Defendant contends that "the only relevant
evidence that Plaintiff claims was unavailable to the DDS
physicians when they rendered their opinions were [sic] Dr.
Bells' Physical Capacity Evaluations," Defendant's Mem. at 18
(citing Plaintiff's Mem. at 14), the Court's review of the record
reveals that a substantial amount of additional evidence was not
available to Drs. Hanna and Missagnian.

      In his June 25, 2004, decision, the ALJ summarized the
medical evidence pertaining to Plaintiff's fibromyalgia, (R. at
91-92), which summary he incorporated by reference in the current
decision, (R. at 18 n.4).  The ALJ referred to Exhibit ("Ex.") 2F

(outpatient physical therapy records from the Rehabilitation
Hospital of Rhode Island covering the period September 6, 2000,
through November 8, 2000), (R. at 198-225); Ex. 4F (a report to
Dr. Bell of an evaluation of Plaintiff by J. Scott Toder, M.D., a
board certified neurologist, dated August 21, 2002, and office
notes dated October 22, 2002), (R. at 229-30); Exs. 6F and 12F
(records from Lisa Harrington, M.D., another rheumatologist,
dated January 26, 2002, through January 3, 2003, and November 25,
2002 through August 5, 2003, (R. at 240-47, 340-42); Ex. 7F
(records from Dr. Anne Frank, a psychiatrist or psychologist,
covering the period from November 15, 2002, through March 23,
2003, (R. at 248-78); Ex. 8F (reports to Dr. Bell from Thomas
Lanna, M.D., a cardiologist, and accompanying test results
covering the period from April 21, 2003, through May 19, 2003,
(R. at 279-84); Ex. 9F (records from Keith W.L. Rafal, M.D., of
the Fibromyalgia Clinic at the Rehabilitation Hospital of Rhode
Island and the Fibromyalgia Program at Healing Choices, P.C.,
covering the period September 6, 2000, through May 30, 2003, (R.
at 285-97); Exs. 10F and 13F (medical records from Dr. Bell from
June 12, 2000, through July 25, 2003, and August 5, 2003, through
October 20, 2003, (R. at 298-333, 343-45); Ex. 11F (records from
Carlos H. Nieto, M.D., a neurologist, dated July 28, 2003,
through August 28, 2003, (R. at 334-39); and Ex. 14F (records
from James P. Crowley, M.D., of The Cancer Center dated December
8, 2003), (R. at 346-54).

It is obvious that all of this evidence could not have been
available to one or both of the non-examining state agency
physicians.  Even some of the exhibits which, chronologically,
could have been before the reviewing doctors may not have been.
For example, Dr. Harrington submitted medical records covering
the periods from January 26, 2002, through January 1, 2003, and
from November 25, 2002, through August 5, 2003.  (R. at 240-47,

19

340-42).  Regarding the former, although many of the records
predate the DDS examiners' evaluations, the fact that the records
extend through January 1, 2003, and constitute one exhibit, (R.
at 240-47), suggests that they were received subsequent to the
agency reviewers' submission of their reports.  The same is true
for the latter records.  (R. at 340-42)  The Court notes that no
medical expert testified at the February 13, 2004, hearing.[11]
(R. at 28)

Moreover, medical evidence was received subsequent to the
Appeals Council's remand of the matter for further proceedings.
(R. at 4, 356-58, 359-64, 365-70, 371-73)  Regarding this
evidence, which obviously could not have been reviewed by the
state agency physicians upon whose assessments the ALJ relied,
the ALJ stated that "[w]ith the exception of reported increasing
fatigue, the medical evidence concerning the period subsequent
[to the June 25, 2004, decision] does not document any
significant change in [Plaintiff's] fibromyalgia or her other
impairments," (R. at 18 n.4).  No medical expert testified at the
December 2, 2004, hearing, (R. at 62), no qualified physician
reviewed this evidence, and the ALJ does not discuss it further
in the December 22, 2004, decision, (R. at 14-22).  Although it
is true that an ALJ is not "precluded from rendering common-sense
judgments about functional capacity based on medical findings, as

---

[11] While the Court recognizes that the decision to call a medical
expert to testify at an administrative hearing is within the
discretion of the ALJ, see Rodriguez Pagan v. Sec'y of Health & Human
Servs., 819 F.2d 1, 5 (1st Cir. 1987)(rejecting assertion that ALJ
should have arranged for testimony of medical advisor on remand and
stating that "[u]se of a medical advisor in appropriate cases is a
matter left to the [Commissioner's] discretion; nothing in the Act or
regulations requires it")(citing Richardson v. Perales, 402 U.S. 389,
408, 91 S.Ct. 1420, 1430 (1971)), the Court finds the fact that no
expert reviewed a substantial portion of the medical evidence to be a
significant factor in concluding that the ALJ's decision is not
supported by substantial evidence.

long as [he] does not overstep the bounds of a lay person's
competence and render a medical judgment," <u>Gordils v. Sec'y of
Health & Human Servs.</u>, 921 F.2d 327, 329 (1st Cir. 1990), in the
particular circumstances presented by the instant matter, the
Court "believe[s] that the record alerted the ALJ to the need for
expert guidance regarding the extent of [Plaintiff's] functional
capacity to perform her particular past employment," <u>Manso-
Pizarro v. Sec'y of Health & Human Servs.</u>, 76 F.3d 15, 19 (1st
Cir. 1996).

As noted previously, in determining the weight given to the
report of a non-examining physician, "[a]mong the factors to
consider is "the availability of most of the medical evidence to
the non-examining physician.'" <u>Rosario v. Apfel</u>, 85 F.Supp.2d
62, 68 (D. Mass. 2000)(quoting <u>DiVirgilio v. Apfel</u>, 21 F.Supp.2d
76, 81 (D. Mass. 1998)); <u>see also</u> <u>Thompson v. Barnhart</u>, Civil
Action No. 05-11051-DPW, 2006 WL 2506035, at *3 (D. Mass. Aug.
28, 2006)(noting that among the factors to be considered is
"whether the majority of the evidence was available to the non-
examining physician")(citing <u>DiVirgilio</u>, 21 F.Supp.2d at 81)
(citing <u>Berrios Lopez v. Sec'y of Health & Human Servs.</u>, 951 F.2d
427, 431 (1st Cir. 1991))); <u>DiVirgilio</u>, 21 F.Supp.2d at 81
(noting that among the factors which enabled the First Circuit in
<u>Berrios Lopez</u> to affirm the ALJ's reliance on the non-examining
physicians' reports was "the availability of most of the medical
evidence to the non-examining physicians"); SSR 96-6p, 1996 WL
374180 (S.S.A.), at *3 ("[T]he opinion of a State agency medical
or psychological consultant or other program physician or
psychologist may be entitled to greater weight than a treating
source['']s medical opinion if the State agency medical or
psychological consultant's opinion is based on a review of a
complete case record ...."). Here, it cannot be said that the
non-examining agency physicians had the complete medical record

21

available to them.  See Rosario, 85 F.Supp.2d at 68 ("The ALJ
relied on the nontreating physicians' review of only a partial
record."); see also Gordils, 921 F.2d at 330 (noting that non-
examining physician "did not have the complete medical record
before him when he formed his opinion").

"With certain limitations, an administrative law judge's
determination of a claimant's ineligibility for benefits may be
deemed to be grounded in substantial evidence even when that
determination significantly relies upon a non-examining
physician's opinion." DiVirgilio, 21 F.Supp.2d at 80.  This is
not one of those cases.  The Court concludes that the reports of
Drs. Hanna and Missagnian, which were dated and which were not
based on the entire medical record, cannot constitute substantial
evidence in support of the ALJ's RFC finding.  See Browne v.
Richardson, 468 F.2d 1003, 1006 (1st Cir. 1972)(noting that
whatever weight should be accorded to non-examining consultant's
report was "substantially diminished because the consultant wrote
the report before [the claimant's personal physician] supplied
his record of office visits showing the symptoms during the
[relevant] period"); Thompson v. Barnhart, 2006 WL 2506035, at *5
(finding that "[b]ecause the only acceptable medical assessment
that supports the ALJ's opinion is a DDS opinion which predates
the hearing by three years ... the ALJ's opinion regarding [the
plaintiff's] mental impairments was not supported by substantial
evidence"); Chelte v. Apfel, 76 F.Supp.2d 104, 108 (D. Mass.
1999)(finding error of law because "[t]he ALJ relied on
nontreating physician review of only a partial record"); Roberts
v. Heckler, 636 F.Supp. 136, 138 (N.D. Ill. 1986)(noting that ALJ
incorrectly relied on out-of-date evaluation).  Accordingly, I
recommend that the matter be remanded for further evaluation of
the complete medical record by a qualified physician.  Cf. Nguyen
v. Chater, 172 F.3d 31, 36 (1st Cir. 1999)(on remand, directing

ALJ to "obtain[] any expert medical opinion needed to illuminate the medical records").

## II. Whether the ALJ properly evaluated Plaintiff's subjective complaints of pain and fatigue

Plaintiff additionally argues that the ALJ improperly evaluated Plaintiff's subjective complaints of pain and other symptoms, namely fatigue, and her credibility. See Plaintiff's Mem. at 14-16; Plaintiff's Reply at 1, 4. Defendant responds that the ALJ's evaluation of Plaintiff's symptoms and credibility was proper. See Defendant's Mem. at 10-11.

The ALJ stated that:

> In determining [Plaintiff's] residual functional capacity, the Administrative Law Judge has carefully considered the claimant's allegations/testimony of the following: that she experienced pain through out her body in multiple joints and fatigue which she claimed precluded prolonged sitting and standing and caused her difficulty using her hands; that she experienced migraine headaches, which occurred primarily at night; that she attempts to relieve her pain primarily with medication, including Vioxx and most recently with Celebrex, but takes these medicines only 1-2 times a week, and generally takes Tylenol 2-3 times a week for her headaches; and her described minimal daily activities of preparing simple meals, doing some light housework and lying down several times a day for symptom relief. Although the Administrative Law Judge realizes that the claimant has experienced some degree of pain, fatigue and functional limitation applying the standard set forth in 20 CFR 404.1529, SSR's 96-3p and 96-8p and Avery v. Secretary of Health and Human Services, 797 F.2d 19 (1st Cir. 1986), it is not of sufficient severity to persuade him that the claimant has been incapable of performing work of a light exertional level ....

(R. at 18)(internal record citations omitted). Thus, he found that "[t]he severity of the symptoms and the degree of incapacity [Plaintiff] asserted are not supported by the record and are not deemed to be credible." (R. at 21)(internal citations omitted).

Avery requires an ALJ to investigate "all avenues presented

23

that relate to subjective complaints ...."  797 F.2d at 28.  The
Court of Appeals for the First Circuit in <u>Avery</u> listed the
following factors to be considered:

> 1.  The nature, location, onset, duration, frequency,
> radiation, and intensity of any pain;
> 2.  Precipitating and aggravating factors (e.g.,
> movement, activity, environmental conditions);
> 3.  Type, dosage, effectiveness, and adverse side-
> effects of any pain medication;
> 4.  Treatment, other than medication, for relief of
> pain;
> 5.  Functional restrictions; and
> 6.  The claimant's daily activities.

<u>Id.</u> at 29; <u>see also</u> 20 C.F.R. § 416.929(c)(3) (2006) (listing
factors relevant to symptoms, such as pain, to be considered);
SSR 96-7p, 1996 WL 374186 (S.S.A.), at *3 (same).

> In instances in which the adjudicator has observed the
> individual, the adjudicator is not free to accept or
> reject that individual's subjective complaints solely on
> the basis of such personal observations.  Rather, in all
> cases in which pain is alleged, the determination
> rationale is to contain a thorough discussion and
> analysis of the objective medical and nonmedical
> evidence, including the individual's subjective
> complaints and the adjudicator's personal observations.

<u>Avery</u>, 797 F.2d at 29.  In addition, "whenever the individual's
statements about the intensity, persistence, or functionally
limiting effects of pain or other symptoms are not substantiated
by objective medical evidence, the adjudicator must make a
finding on the credibility of the individual's statements based
on a consideration of the entire case record."  SSR 96-7p, 1996
WL 374186, at *2.  "The credibility determination by the ALJ, who
observed the claimant, evaluated h[er] demeanor, and considered
how that testimony fit in with the rest of the evidence, is
entitled to deference, especially when supported by specific
findings."  <u>Frustaglia v. Sec'y of Health & Human Servs.</u>, 829

F.2d 192, 195 (1st Cir. 1987)(citing <u>DaRosa v. Sec'y of Health &</u> <u>Human Servs.</u>, 803 F.2d 24, 26 (1st Cir. 1986); <u>see also</u> <u>Irlanda</u> <u>Ortiz v. Sec'y of Health & Human Servs.</u>, 955 F.2d 765, 769 (1st Cir. 1991)("It is the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence.").

The Court initially notes that the fact that the ALJ did not discuss in detail Plaintiff's testimony at the two hearings does not mean that the ALJ did not evaluate said testimony.  The ALJ stated that he had carefully considered the hearing testimony. (R. at 17)  Contrary to Plaintiff's assertion, <u>see</u> Plaintiff's Mem. at 16 ("[T]he ALJ did not discuss her repeated statements about the need to lie down during the day."), the ALJ addressed Plaintiff's fatigue, recognizing that she testified that she experienced "fatigue which she claimed precluded prolonged sitting and standing and caused her difficulty using her hands ...," (R. at 17), and that her daily activities included "lying down several times a day for symptom relief," (R. at 18)(internal citation omitted).

In addition, the ALJ's brief summary addressed the required <u>Avery</u> factors.  The ALJ noted that Plaintiff alleged that she experienced pain throughout her body in multiple joints as well as fatigue and migraine headaches, (R. at 17); that she attempted to alleviate her pain primarily with medication, (R. at 17-18); that fatigue precluded prolonged sitting and standing and caused difficulty in using her hands, (R. at 17); that she had to lie down several times per day for relief from her symptoms, (R. at 18); and that her daily activities were minimal, (<u>id.</u>).  He also gave reasons for finding her allegations regarding the severity of her symptoms and the resulting degree of incapacity not credible.  (R. at 21)  He noted, for example, that she took her prescription pain medications only once or twice per week, that

she generally took over-the-counter medication, Tylenol, for her headaches, and that she was able to prepare simple meals and do some light housework.  (R. at 18)

Moreover, Plaintiff was thoroughly questioned at the February 13, 2004, and December 2, 2004, hearings regarding the Avery factors.  See Frustaglia, 829 F.2d at 195 ("The ALJ thoroughly questioned the claimant regarding h[er] daily activities, functional restrictions, medication, prior work record, and frequency and duration of the pain in conformity with the guidelines set out in Avery regarding the evaluation of subjective symptoms.")(citations omitted); see also Lopes v. Barnhart, 372 F.Supp.2d 185, 192 (D. Mass. 2005)("A searching review of the hearing testimony, however, reveals that the hearing officer covered—despite the cursory conclusion—all of the Avery factors."); Reeves v. Barnhart, 263 F.Supp.2d 154, 163 (D. Mass. 2003)("The ALJ explicitly questioned Plaintiff concerning the Avery factors.").  Plaintiff was asked about her pain (R. at 39, 43-44, 78); any precipitating and/or aggravating factors (R. at 41, 79-80); her medications (R. at 38-40, 46, 70-71, 74-81); any treatment, other than medication, to relieve her pain (R. at 41-42); her functional restrictions (R. at 40-41, 45, 69-70); and her daily activities (R. at 35-38, 42-43, 45, 72-74), including, specifically, her need to lie down during the day,  (R. at 42-43, 69, 73)

The Court is satisfied that "all avenues presented that relate to subjective complaints," Avery, 797 F.2d at 28, were investigated, see id.  "Although more express findings, regarding ... pain and credibility, than those given here are preferable ...," Frustaglia, 829 F.2d at 195, the Court concludes that the ALJ adequately evaluated Plaintiff's subjective complaints of pain and fatigue as well as her credibility.

On remand, however, the ALJ may wish to revisit his

credibility finding in light of his reassessment of Plaintiff's RFC, although the Court will not require him to do so.  It is possible that the ALJ's finding that "[t]he severity of the symptoms and the degree of incapacity [Plaintiff] asserted are not supported by the record and are not deemed to be credible," (R. at 21)(internal citations omitted), was colored by his rejection of Dr. Bell's Physical Capacity Assessments, (R. at 19); <u>see also</u> (R. at 67)("I have never seen a residual functional capacity that's a person who is as limited as this.").

### Summary

For the reasons stated above, I find that the ALJ's determination that Plaintiff retained the RFC for light work which could be performed with the non-exertional limitation of occasional moderate reduction in attention and concentration is not supported by substantial evidence in the record because the ALJ relied on assessments by non-examining physicians who did not have the complete medical record available to them.  Accordingly, I conclude that remand is warranted.  I so recommend.  I further find that the ALJ adequately evaluated Plaintiff's subjective complaints and credibility as required by <u>Avery</u> and, therefore, do not recommend remand on this issue.  However, the ALJ may wish to revisit his finding regarding Plaintiff's credibility in light of his reassessment of her RFC.

### Conclusion

The Court finds that the Commissioner's decision that Plaintiff is not disabled is not supported by substantial evidence in the record.  Accordingly, I recommend that Plaintiff's Motion to Remand be granted to the extent that it seeks remand to the Commissioner for further administrative proceedings.  I further recommend that Defendant's Motion to Affirm be denied.

DAVID L. MARTIN
United States Magistrate Judge
September 29, 2006